**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

MIGHTY MEN OF GOD, INC.
a Florida corporation, d/b/a MIGHTY MEN,

      Plaintiff,

v.                                           CASE NO.: 6:14-cv-947-Orl-28TBS

WORLD OUTREACH CHURCH OF
MURFREESBORO TENNESSEE,
INCORPORATED, a Tennessee corporation,
d/b/a www.mightymenusa.org,
d/b/a www.intendministries.org,
INTEND MINISTRIES, Angus Buchan,
Phillip Jackson, and G. Allen Jackson,

      Defendants.

_____/

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, MIGHTY MEN OF GOD, INC. ("MMOG"), files this Response and
Memorandum of Law in Opposition to the Motion to Dismiss Complaint [DE #22] (the "Motion")
filed by Defendants, WORLD OUTREACH CHURCH OF MURFREESBORO TENNESSEE,
INCORPORATED; INTEND MINISTRIES, Phillip Jackson, and G. Allen Jackson, and states:

**INTRODUCTION**

Defendants may hold themselves out as *"fully devoted followers of Jesus Christ, in*
*Murfreesboro, Tennessee, and across the world,"* [Motion at p. 2], but they bear a more-apt
descriptor – tortfeasor. They commit torts in Florida, and they commit torts outside Florida which
have the "effect" of causing injury to residents in Florida. Wrapped in the self-proclaimed, false
mantle of *"transforming [a] message of God's Word to where people live through radio and*
*television broadcasts, as well as other media tools"* [Motion at p. 7], Defendants accomplish this

goal, by infringing upon – indeed stealing – the property of others, most ironically by taking Plaintiff's legally-protected trade name, *"Mighty Men,"* which itself is a Biblical allusion.

Defendants make no attempt to dispute the truth of their infringement, because it cannot be disputed. Instead, Defendants attempt to wriggle out of the jurisdictional grasp of this Court by pointing to the traditional factors associated with determining jurisdiction: physical location, licenses, offices, phone numbers, etc., and by deflecting the analysis of Defendants' presence in Florida through its website access, and other social media tools, and through its television network programming. Defendants do not have to be physically present in Florida to inflict injury here, and while Defendants' message may have been old school, the means by which Defendants spewed their infringing message in Florida with the simple click of a "mouse" or channel changer was thoroughly high-tech.[1] *See* Declaration of Dr. Paul David Freed attached hereto as **Exhibit "B."** Defendants' web presence offered more than just a passive information source; Defendants targeted their web activity to spark a high level of viewer interactivity with their hearts, minds, and – ultimately – their pocketbooks. And Defendants' futile attempt to insulate themselves from the actions of its television broadcasters by claiming to possess no "control over the television stations" cannot shift the blame when Defendants chose the broadcasters, such as DirecTV, with a national audience, knowing their market reach.

Despite their protests, Defendants admit to selling "goods and services" in Florida. They attempt to diminish those in-state sales as "insignificant," but skirt the truth that Defendants willingly and knowingly, and with the manifest intent to reach people in Florida, infringed upon

---

[1] Lest the Court have any doubt, Plaintiff suggests the Court merely conduct an internet browser search using the search phrase "Mighty Men." Defendants have completely stonewalled attempts at obtaining full discovery about its internet and broadcast use, instead providing only the most basic sales figures. *See* Declaration of Tucker H. Byrd attached hereto as **Exhibit "A,"** setting forth the email communications concerning Defendants' marketing efforts.

2

the property rights of a corporate citizen here in this state. Given that Defendants admit to selling goods and services elsewhere in the United States, knowing this treads upon Plaintiff's national brand, makes the impact on Plaintiff here in Florida even more concrete. Whether the sales occurred in-state or out-of-state, Plaintiff felt the effect in Florida, both in the form of lost business, business misappropriated, and confusion caused with Plaintiff's constituents. *See* Declaration of Dr. Paul David Freed attached hereto as **Exhibit "B."**

The legal precedent upon which Defendants rely to make their jurisdictional argument conspicuously lacks any reference to the controlling precedent in the Eleventh Circuit found in *Licciardello*, which found that a trademark infringer using the internet to target a Florida resident in order to misappropriate his name for commercial gain should have expected to be haled into court in Florida consistent with the requirements of due process. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008).

Coming from an organization named "World Outreach Church," whose unabashed goal is to reach people "across the world," the irony will not be lost on this court that Defendants seek to exclude Florida from that domain. Defendants claim not to have targeted Florida residents with their reach, which their own global mission statement refutes, and ignores the fact that the Plaintiff, the biggest target of all (for misappropriation purposes), resides in Florida. Defendants, having sought to be hailed globally for their outreach message and programming, should have expected to be haled locally into a court in Florida when the means it chose hurt Plaintiff here.

## BACKGROUND

Plaintiff, a nationally-recognized provider of faith-based men's fellowship programming, exclusively owns the distinctive trade name, *"Mighty Men."* Based in Florida, Plaintiff has organized and overseen the hosting of educational conferences in seventeen different states,

including the Tennessee where Defendants are based. *See* Declaration of Dr. Paul David Freed attached hereto as **Exhibit "B."**  It also distributes and sells CDs under the "Mighty Men" mark from Florida to people throughout the United States and the world.  After years of promoting and protecting its mark, the name "Mighty Men" has acquired extensive secondary meaning.

The evidence supporting Defendants' infringement throughout the United States, and specifically in Florida, cannot be disputed. Since at least 2013, Defendants have infringed upon Plaintiff's mark, most notably through the promotion of its own "Mighty Men" brand which Defendants use to promote their own men's educational conferences, as well as to promote and sell other goods and services affiliated with that false brand.  Utilizing a comprehensive internet strategy, Defendants deployed various websites such as www.mightymenusa.org; www.wochurch.org; and www.wochurch.org/mightymenusa, to promote the false brand. Defendants also liberally used social media platforms such as Facebook, Twitter, Linked-In, Pinterest, YouTube, and Vimeo to disseminate the offending materials. *See* Declaration of Dr. Paul David Freed attached hereto as **Exhibit "B."**  Moreover, Defendants admit to utilizing nationally-recognized network providers to broadcast the offending programming.

Plaintiff merely has to make a prima facie showing to establish long-arm jurisdiction over Defendants because their evidence fails to controvert the Plaintiff's Complaint and supporting Declarations, and this is the case even though Defendants have failed and refused to provide marketing materials utilized in the website, social media, and network programming which Plaintiff requested in discovery. *See* Declaration of Tucker H. Byrd attached hereto as **Exhibit "A."**[2]

---

[2] In light of Defendants' refusal to provide adequate responses to Plaintiff's discovery requests, if the Court concludes that the allegations of the Complaint and Plaintiff's supporting Declarations cannot be harmonized with Defendants' Declarations, then this is all the more reason why the Court should conduct

4

## STANDARD OF REVIEW

In the context of motions to dismiss for lack of personal jurisdiction, a plaintiff must only present a prima facie showing of personal jurisdiction. *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* If the defendant sustains its burden of challenging plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). All pleadings and affidavits introducing evidence relating to jurisdictional facts are to be construed in the light most favorable to the plaintiff. *Delong Equipment,* 840 F.2d at 845. If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists. *Future Tech. Today,* 218 F.3d at 1249. If the Court is unable to harmonize the factual discrepancies between the plaintiff's and defendant's submissions, then the Court should conduct a limited evidentiary hearing on the issue of jurisdiction. *Voorhees,* 837 F. Supp. at 401.

## ARGUMENT

### I.    This Court Has Personal Jurisdiction Over The Defendants.

The Defendants are subject to personal jurisdiction under § 48.193(1)(a)(2), Florida Statutes,[3] because they committed tortious acts causing injury within this State and within this judicial District by intentionally infringing upon Plaintiff's trademark and causing damage to Plaintiff's business and reputation here in Florida. Plaintiff states a prima facie case for jurisdiction

---

an evidentiary hearing to resolve the jurisdictional issue. *Voorhees v. Cilcorp, Inc.,* 837 F. Supp. 395, 401 (M.D. Fla. 1993), as clarified (Nov. 16, 1993).

[3] The predecessor statute, § 48.193(1)(b), Florida Statutes, which may have applied to some of the infringements, contains the same operative language under the same, relevant long-arm provision.

by alleging that Defendants committed intentional torts that caused injuries to Plaintiff in this State. The Complaint also alleges that Plaintiff is domiciled in Florida and its injuries were suffered here as a result of Defendants' intentional infringement that occurred here, and these allegations go unrebutted by Defendants. *See* Declaration of Dr. Paul David Freed attached hereto as **Exhibit "B."** Once a plaintiff establishes a prima facie case for personal jurisdiction under the long-arm statute, the Court must turn to evidence presented by the defendant to challenge the plaintiff's allegations. *Canadian Steel*, *Inc. v. HFP Capital Markets, LLC,* 2012 WL 2326119, *3 (S.D. Fla. 2012).

Defendants try to distance themselves from Florida by arguing they do not solicit any business from Florida, but their own Affidavits admit that they broadcast their programming through radio and television broadcasts, all accessible to Florida residents. [DE #23-1 at p. 2; DE#23-2 at p. 2.]  Moreover, Defendants also liberally used social media platforms such as Facebook, Twitter, Linked-In, Pinterest, YouTube, and Vimeo to disseminate the offending materials, all accessible from Florida. *See* Declaration of Dr. Paul David Freed attached hereto as **Exhibit "B."**

The solicitation aside, the Defendants are still subject to jurisdiction in this State because their acts caused injury to the Plaintiff within this State.  Defendants argue that merely causing an injury alone in Florida does not satisfy personal jurisdiction requirements, but the case law in this Circuit holds otherwise.  Defendants sidestep the relevant binding Eleventh Circuit authority of *Licciardello,* which recognizes jurisdiction over an out-of-state defendant who commits an out-of-state tort, so long as that tort causes an injury in Florida. *Licciardello*, 544 F.3d at 1283; *see also Canadian Steel*, 2012 WL 2326119 at *4 (acknowledging the Eleventh Circuit's broad adoption of the long-arm statute).  District Courts in the Middle District have followed this rationale.  *See,*

6

*e.g., R & R Games, Inc. v. Fundex Games, Ltd.,* No. 8:12-CV-01957-T-27, 2013 WL 784397, at *4 (M.D. Fla. Mar. 1, 2013) (allegations of trademark infringement satisfy minimum contacts because trademark infringement is an intentional tort directed toward the state in which plaintiff is domiciled); *New Lenox Indus. v. Fenton,* 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007) ("[W]here a defendant's [tortious] conduct is intentionally and purposefully directed as a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum."); *see also KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP,* No. 608-CV-85-ORL-19KRS, 2009 WL 103645, at *14 (M.D. Fla. Jan. 15, 2009) ("[P]ersonal jurisdiction is proper over a defendant who commits an intentional and allegedly tortious act expressly aimed at the plaintiff in the forum state," including trademark infringement aimed at the plaintiff in the plaintiff's home state)

The affidavits provided by the Defendants fail to provide any evidence to counter Plaintiff's allegation that they were injured in Florida. Defendants simply deny their own connections or relationships to Florida which is insufficient to counter Plaintiff's assertions, and thus, the long-arm statue is satisfied. *See Canadian Steel*, 2012 WL 2326119 at *5 (finding affidavit of defendant "of little significance to the jurisdiction question" where it "fail[ed] to counter [assertions regarding injury in Florida] with anything more than conclusory denials of contacts with the State of Florida"); *see also R & R Games,* 2013 WL 784397 at *4 (holding that jurisdiction was proper when none of the defendants' declarations contradicted plaintiff's allegations that defendants harmed plaintiff in Florida by committing trademark infringement). Defendants make no effort to challenge Plaintiff's assertion about being injured in this State.

Defendants then fall back and argue that subjecting them to personal jurisdiction violates due process because they lack sufficient minimum contacts to comport with traditional notions of

7

fair play and substantial justice. Defendants attempt to support their argument with the banal statements that they have no business presence in Florida.  While this argument might be persuasive if the Court were attempting to assert general jurisdiction over these Defendants, the points raised have little bearing when specific jurisdiction is asserted based upon tortious conduct causing injury in this State.

Defendants utilized the internet to inflict injury upon Plaintiff in Florida.  Although Defendants contend that operation of a website alone is insufficient to establish minimum contacts, the Court in *Licciardello* stated that "so long as it created a substantial connection with the forum, even a single act can support jurisdiction," and that "[i]ntentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." 544 F.3d at 128 (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984).  The *Licciardello* court found that because the website with the infringing trademarked material was accessible in Florida, the trademark infringement necessarily occurred in Florida, and the defendant had therefore committed an intentional tort targeting a Florida-based plaintiff to satisfy sufficient contacts with Florida for due process purposes. *Id.*  The court stated that a Florida plaintiff injured by intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy.  *Id.*  Here, Plaintiff is domiciled in Florida, and Plaintiff alleges that the Defendants committed intentional torts of trademark infringement against it here in Florida by publishing trademarked material on their website, and persisted with their infringement even though they were aware that Plaintiff's trademarks were granted "incontestable status." *See also* Declaration of Dr. Paul David Freed attached hereto as **Exhibit "B."**  Having committed these intentional torts against a Florida resident, knowing and intending that the Plaintiff would be injured, Defendants should have

8

known, and reasonably expected to be haled into court in this jurisdiction.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss should be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to ECF registrants.

**Tucker H. Byrd & Associates, P.A.**
**BYRD TRIAL GROUP**

*s/ Tucker H. Byrd*

**Tucker H. Byrd**
Florida Bar No. 381632
**Scottie N. McPherson**
Florida Bar No. 085137
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile:  (407) 392-2286
TByrd@ByrdTrialGroup.com
SMcPherson@ByrdTrialGroup.com

**J. NIXON DANIEL, III**
Florida Bar No. 228761
**JOHN R. ZOESCH III**
Florida Bar No. 0045257
**Beggs & Lane R.L.L.P.**
P.O. Box 12950
Pensacola, FL 32591-2950
(850) 432-2451
jnd@beggslane.com
jrz@beggslane.com

*Attorneys for Plaintiff*

9