UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MIGHTY MEN OF GOD, INC.,**

    **Plaintiff,**

v.                                         Case No:  6:14-cv-947-Orl-41TBS

**WORLD OUTREACH CHURCH OF MURFREESBORO TENNESSEE, INCORPORATED, INTEND MINISTRIES, ANGUS BUCHAN, PHILLIP JACKSON and G. ALLEN JACKSON,**

    **Defendants.**

## ORDER

THIS CAUSE is before the Court on Defendants'—World Outreach Church of Murfreesboro, Tennessee, Inc. ("World Outreach"), Intend Ministries ("Intend"), Phillip Jackson, and G. Allen Jackson (collectively, "Defendants")[1]—Motion to Dismiss (Doc. 22), wherein Defendants seek to dismiss this case for lack of personal jurisdiction. Plaintiff, Mighty Men of God, Inc., has filed a Response. (Doc. 31). For the reasons set forth below, Defendants' Motion to Dismiss will be denied.

### I.   BACKGROUND

Organized in 2002, Plaintiff is a Florida corporation with its principle place of business in Orange County, Florida. (Compl., Doc. 1, ¶ 10). Plaintiff provides "Christian educational services to individuals throughout the United States." (*Id.* ¶ 16). Particularly, "Plaintiff focuses its

---

[1] Defendant Angus Buchan did not participate in the Motion to Dismiss. (*See* Mot. Dismiss at 1).

educational services on men . . . through conferences it holds frequently in many states." (*Id.*). Plaintiff claims to have hosted conferences in seventeen different states. (*Id.* ¶ 22). According to Plaintiff, the "conferences are held under the name 'Mighty Men of God,' and are marketed using that name and the name 'Mighty Men.'" (*Id.* ¶ 17). Indeed, Plaintiff maintains registered trademarks for both terms—"Mighty Men of God" (the "MMOG Mark") and "Mighty Men" (the "Mighty Men Mark"). (Exs. 1, 2 to Compl., Doc. 1). Both marks relate to "educational services, namely, conducting conferences in the field of men's ministry." (*Id.*). The Mighty Men Mark was registered on November 2, 2004, (Ex. 2 to Compl.), and Plaintiff alleges that its use "has been continuous and uninterrupted for over a decade[,] since at least as early as October 30, 2002," (Compl. ¶ 20). The MMOG Mark, which was registered on November 4, 2008, (Ex. 1 to Compl.), has purportedly been in use "since at least as early as February 17, 2003," (Compl. ¶ 21). In addition to the conferences, Plaintiff has "distributed and sold CDs under the [Mighty Men Mark] since at least as early as the filing date of its trademark application." (*Id.* ¶ 22).

Both Defendant World Outreach and Defendant Intend are nonprofit corporations, which are incorporated in Tennessee and whose principal place of business is located in Murfreesboro, Tennessee. (G. Allen Jackson Decl., Doc. 23-1, ¶¶ 4, 6; Phillip Jackson Decl., Doc. 23-2, ¶¶ 4, 6). Plaintiff alleges that World Outreach offers "nearly identical services to those offered by Plaintiff" by "conducting educational seminars and conferences in the field of men's ministry." (Compl. ¶ 27). Two such conferences took place in 2013, the first in Murfreesboro, Tennessee and the second in Nashville, Tennessee. (G. Allen Jackson Decl. ¶ 14; Phillip Jackson Decl. ¶ 14; Compl. ¶ 28). World Outreach and Intend also maintain a website—www.intendministries.org—through which they "permit visitors to sign up for email messages, listen to music or sermons,

and . . . purchase various products." (G. Allen Jackson Decl. ¶ 18; Phillip Jackson Decl. ¶ 18; Compl. ¶¶ 29–31).

Defendant G. Allen Jackson has "served as the senior pastor and Vice President" of World Outreach, as well as the President of Intend. (G. Allen Jackson Decl. ¶ 2). Defendant Phillip Jackson "serve[s] as an associate pastor and Assistant Secretary" of World Outreach, as well as Vice President of Intend. (Phillip Jackson Decl. ¶ 2). Phillip Jackson is also the registrant of a website—www.mightymenusa.org—through which he "promot[es] and advertis[es] . . . services and products being offered by codefendants." (Compl. ¶ 32). In addition, for both World Outreach and Intend, Phillip Jackson is the designated registered agent with the Tennessee Secretary of State. (*Id.*).

Plaintiff contends that Defendants have marketed their services and have organized their conferences using Plaintiff's Marks. (*Id.* ¶¶ 27–28). Plaintiff further maintains that, through their website, World Outreach and Intend are making and distributing products, including CDs and DVDs, using the Mighty Men Mark. (*Id.* ¶¶ 29–31). Moreover, according to Plaintiff, Phillip Jackson promotes products and services under the Mighty Men Mark on his website. (*Id.* ¶ 32).

Thus, Plaintiff initiated this case on June 18, 2014 by filing the Complaint, wherein Plaintiff generally alleges that "Defendants have willfully infringed Plaintiff's rights, and continue to infringe with no intention to discontinue their infringing use." (*Id.* ¶ 38). The Complaint includes six claims: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) unfair competition under 15 U.S.C. § 1125(a); (4) unfair competition under Fla. Stat. § 501.204; (5) violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); and (6) further violations of the Florida Deceptive and Unfair

Trade Practices Act, Fla. Stat. §§ 501.201–501.213. (Compl. ¶¶ 42–82). On September 5, 2014, Defendants moved to dismiss the Complaint for lack of personal jurisdiction.

## II.   LEGAL STANDARD

Through Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss based on lack of personal jurisdiction. "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009)). However, if "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position,'" the plaintiff then bears the burden of producing evidence supporting jurisdiction. *Id.* (quoting *United Techs.*, 556 F.3d at 1274). Nevertheless, "when 'the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction,'" the plaintiff need not rebut those assertions with supporting evidence. *Id.* (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)). When the plaintiff's complaint and the defendant's evidence conflict, the court "construe[s] all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

## III.   DISCUSSION

Defendants contend that they are not subject to personal jurisdiction in Florida and that, therefore, this case should be dismissed. In response, Plaintiff argues that the exercise of personal jurisdiction over Defendants is proper because Defendants intentionally directed infringing conduct at Plaintiff, which is located within Florida.

"A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with

federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). In that vein, the dispute over personal jurisdiction begins with a two-part inquiry: "(1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton*, 736 F.3d at 1350.

  **A.**  **Florida's Long-Arm Statute**

Where, as here, "jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996). Florida's long-arm statute is codified at section 48.193 of the Florida Statutes; its interpretation "'is a question of Florida law,' and this Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton*, 736 F.3d at 1352 (quoting *United Techs.*, 556 F.3d at 1274). Florida's long-arm statute is to be strictly construed. *Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.3d 889, 891 (11th Cir. 1983) (interpreting Florida law).

As the statutory basis for personal jurisdiction, Plaintiff relies on subsection 48.193(1)(a)(2), which permits the exercise of specific personal jurisdiction over a nonresident defendant "for any cause of action arising from" that defendant's "[c]ommi[ssion] [of] a tortious act within this state."[2] Under Florida law, "a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida." *Louis*

---

[2] Plaintiff only argues that this Court has specific personal jurisdiction over Defendants. (*See* Resp. at 8). Therefore, this Court need not determine whether general jurisdiction exists under both subsection 48.193(2) of the Florida Statutes and the Due Process Clause, which requires "continuous and systematic" contacts with the forum, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

*Vuitton*, 736 F.3d at 1353 (alteration in original) (emphasis omitted) (quoting *Lovelady*, 544 F.3d at 1283). For purposes of the Florida long-arm statute, trademark infringement claims allege tortious acts. *See id.*

In the Motion to Dismiss, Defendants do not address whether Florida's long-arm statute permits the exercise of personal jurisdiction in this case; rather, through that omission, Defendants seem to concede that it does. (*See* Mot. Dismiss at 4). Indeed, the Complaint includes allegations that Defendants infringed on Plaintiff's trademarks by holding conferences, maintaining websites, and marketing products that incorporate the Mighty Men Mark. Defendants neither rebut nor deny those contentions. As noted, such conduct is a "tortious act" within the meaning of subsection 48.193(1)(a)(2). Additionally, "by virtue of the website[s'] accessibility in Florida," the infringement occurred in Florida. *Lovelady*, 544 F.3d at 1283; *see also Louis Vuitton*, 736 F.3d at 1353–54. Therefore, Defendants committed a tortious act within this state.

At any rate, Defendants also committed a tortious act within Florida by causing injury to Plaintiff, which is a Florida-based entity. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (holding that the Eleventh Circuit's "firmly established precedent . . . interprets subsection [48.193(1)(a)(2)] to apply to defendants committing tortious acts outside the state that cause injury in Florida"); *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1228 (M.D. Fla. 2000) ("Injury from trademark infringement occurs in the state where the trademark owner resides."). Accordingly, the exercise of personal jurisdiction over Defendants is permitted under Florida's long-arm statute.

### B. The Due Process Clause

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). Generally, the constitutional requirement is "satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (alteration in original) (quoting *Int'l Shoe*, 326 U.S. at 316).

"In specific personal jurisdiction cases," the Eleventh Circuit characterizes those requirements as a "three-part due process test, which examines" the following:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

### 1. Prong One: Relatedness

As noted, the first prong centers on whether a "plaintiff's claim . . . arise[s] out of or relate[s] to at least one of defendant's contacts with the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (quotation omitted). The Eleventh Circuit has "not developed or adopted a specific approach to determining relatedness; instead, [the Eleventh Circuit has] heeded the Supreme Court's warning against using mechanical or quantitative tests." *Oldfield*, 558 F.3d at 1222 (quotation omitted). "Necessarily, the contact must be a 'but-for' cause of the tort, yet the causal nexus between the tortious conduct and the purposeful contact must be such

that the out-of-state resident will have 'fair warning that a particular activity will subject [it] to the jurisdiction of a foreign sovereign.'" *Id.* at 1222–23 (quoting *Burger King*, 471 U.S. at 472).

Here, Plaintiff alleges that Defendants intentionally infringed Plaintiff's Marks by holding conferences, maintaining websites, and marketing products, all of which featured Plaintiff's Mighty Men Mark. That intentional conduct resulted in contact with the forum in the form of Plaintiff's injury. That contact, while minimal, is the direct cause of Plaintiff's claims. The evidence submitted in support of Defendants' Motion to Dismiss does not refute the accuracy of such allegations. At least in the case of intentional torts, such claim-causing contact is sufficient to satisfy the first prong. *See Commodores Entm't Corp. v. McClary*, No. 6:14-cv-1335-Orl-37GJK, 2015 WL 1242818, at *3 (M.D. Fla. Mar. 18, 2015) (addressing the relatedness prong and holding that forum-based injury suffices as the claim-causing contact).

### 2. Prong Two: Purposeful Availment

The second prong requires that "there . . . exist 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws.'" *Oldfield*, 558 F.3d at 1220 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (quotations omitted). However, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 475 n.18.

"Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Lovelady*, 544 F.3d at 1285. Where the underlying claims involve intentional torts, purposeful availment can be determined

through application of the "effects test," which was developed in *Calder v. Jones*, 465 U.S. 783 (1984). *See Louis Vuitton*, 736 F.3d at 1356–57 (holding that, in intentional tort cases, courts may apply either the effects test or the traditional minimum contacts test for determining whether personal jurisdiction satisfies the Due Process Clause). "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356. To satisfy the effects test, the tort must have: "(1) [been] intentional; (2) [been] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Lovelady*, 544 F.3d at 1286.

Here, based on the *Calder* effects test, Defendants have purposefully availed themselves of the benefits of this forum. While Defendants fail to address the applicability of the effects test, Plaintiff relies on *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), in which the Eleventh Circuit applied the effects test in a factually-similar scenario. In that case, a nonresident defendant, who was previously employed as the plaintiff's personal manager, allegedly posted the plaintiff's "trademarked name and . . . picture" on the defendant's website, thereby "implying that [the plaintiff] endorsed [the defendant's] skill as a personal manager." *Id.* at 1282. The plaintiff sued the defendant in the Middle District of Florida for trademark infringement, among other related claims. *Id.* The defendant, who resided in Tennessee, moved to dismiss for lack of personal jurisdiction; the district court granted the motion, and the plaintiff appealed that decision. *Id.*

On appeal, the Eleventh Circuit addressed purposeful availment through application of the effects test. *Id.* at 1285, 1287–88. In doing so, the court noted that the defendant's infringement "was not negligent, but intentional." *Id.* at 1287. The court continued—"The purpose was to make money from [the plaintiff's] implied endorsement. The unauthorized use of [the plaintiff's] mark,

therefore, individually targeted [the plaintiff] in order to misappropriate his name and reputation for commercial gain." *Id.* at 1287–88. Such allegations, as held by the *Lovelady* court, "satisfy the *Calder* effects test for personal jurisdiction," and therefore, the "Constitution [was] not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over" the nonresident defendant. *Id.* at 1288.

Like *Lovelady*, this case involves allegations of intentional conduct, thereby satisfying the first requirement of the effects test. For example, the Complaint generally alleges that, through Defendants' use of Plaintiff's Marks, "Defendants have willfully infringed Plaintiff's rights, and continue to infringe with no intention to discontinue their infringing use." (Compl. ¶ 38). Counts One, Two, and Three state, in some fashion, that "Defendants committed the infringing acts with knowledge that their unauthorized use of Plaintiff's Marks was intended to cause confusion, mistake, and to deceive the public." (*Id.* ¶ 48; *see also id.* ¶¶ 57, 64). Both Counts Four and Five state that "Defendants' conduct is willful and intentional, and has caused and is continuing to cause injury to Plaintiff." (*Id.* ¶¶ 70, 77). Count Five goes a step further and states that "Defendants have registered, trafficked in, and used the domain names with the bad faith intent to profit from Plaintiff's Marks." (*Id.* ¶ 76). Lastly, Count Six provides that Defendants "intentionally engaged" in the infringing conduct, which was "calculated to deceive . . . the public into mistakenly believing that Defendants are affiliated, connected, or associated with Plaintiff's goods and services." (*Id.* ¶¶ 81–82).

Also like *Lovelady*, Defendants are alleged to have individually targeted Plaintiff, which is a Florida-based entity, thereby satisfying the second and third prongs of the effects test. Particularly, the Complaint alleges that "Plaintiff has provided Christian educational services" since 2002 and has held conferences in seventeen different states, one of which was Tennessee.

(*Id.* ¶¶ 16, 22). Over a decade later, Defendants organized similar conferences under Plaintiff's Mighty Men Mark, incorporated Plaintiff's Marks into the domain names of Defendants' websites, and sold products bearing Plaintiff's Marks on the websites. From those facts, Plaintiff concludes that such conduct was intentional and that the purpose of the infringement was to create the impression either that Plaintiff and Defendants were related or that Plaintiff and Defendants were one in the same.

Of particular importance, Defendants have failed to rebut the relevant allegations of the Complaint. Through supporting evidence, Defendants do aver that they do not "direct any media advertising into the State of Florida[] [or] engage in any other conduct to intentionally target the State of Florida." (G. Allen Jackson Decl. ¶ 11; Phillip Jackson Decl. ¶ 11). Such a conclusory assertion, without more, is insufficient to refute the Complaint's allegation that Defendants have intentionally targeted Plaintiff, which resides within the forum.

Thus, based on the unrebutted allegations of the Complaint, Defendants intentionally targeted Plaintiff. The purpose of Defendants' conduct was either to benefit from or to usurp Plaintiff's goodwill. By directly targeting Plaintiff, Defendants' infringement was "aimed at the forum state," and by virtue of that fact, Defendants "should have anticipated" that the injury to the Florida-based Plaintiff would be suffered in Florida. *See Lovelady*, 544 F.3d at 1286–88. Certainly, Defendants, whose self-proclaimed aspiration is "to help[] people become more fully devoted followers of Jesus Christ, in Murfreesboro, Tennessee, *and across the world*," (G. Allen Jackson Decl. ¶ 5; Phillip Jackson Decl. ¶ 5 (emphasis added)), could foresee being haled into a Florida court based on their alleged intentional infringement.

To be sure, much of Defendants' argument focuses on their seemingly minimal contacts with Florida, which is relevant under the "traditional minimum contacts test for purposeful

availment," *Louis Vuitton*, 736 F.3d at 1356, and in doing so, Defendants cite a number of nonbinding cases—*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390 (4th Cir. 2003); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003). As an initial matter, other than citing those cases, Defendants fail to actually explain each cases' applicability. For the most part, each case involves allegations that a nonresident defendant-infringer displayed the plaintiff-owner's trademark on the infringer's website.[3]

In addition to being nonbinding, each case differs from the present. For example, neither case involves allegations of intentional infringement; rather, the respective court analyzed whether the infringer's website in itself established minimum contacts with the forum.[4] Particularly, in *Pebble Beach* and *Carefirst*, the parties did not compete in the same industry, and the primary means of infringement was the passive use of the owner's protected mark on the infringer's website. In contrast, here, Defendants' conduct is alleged to have been intentional, and therefore, like in *Lovelady*, purposeful availment can be established under the effects test. Moreover, Defendants directly compete with Plaintiff, and the infringement occurred through conferences and the sale of merchandise via Defendants' website. Rather than rebut the Complaint's allegations regarding intentional conduct, Defendants' entire argument revolves around whether its websites

---

[3] Defendants also cite *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002), in which the Sixth Circuit held "that the district court erred in granting the [defendant-infringers'] motion to dismiss for lack of personal jurisdiction," *id.* at 876; in other words, the infringers were subject to specific personal jurisdiction in the forum, *id.* at 874–76. That holding directly opposes Defendants' position.

[4] In *Toys "R" Us*, the Third Circuit does mention the effects test in dicta. *See Toys "R" Us*, 318 F.3d at 455 n.6. However, the court noted that—by not establishing that the defendant-infringers' conduct was intentionally aimed at the forum—the plaintiff-owner had not satisfied the effects test. Here, the Complaint specifically alleges that Defendants intentionally targeted Plaintiff, thereby expressly aiming their infringement at the forum.

are sufficiently interactive to justify the assertion of personal jurisdiction. Where, as here, the Complaint includes allegations of intentional infringement, the medium through which the infringement occurred does not change the analysis.

### 3. Prong Three: "Fair play and substantial justice"

As noted, with regard to the third prong, Defendants bear the burden of establishing that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1355. This inquiry requires consideration of the following factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the [interstate] judicial system's interest in resolving the dispute." *Lovelady*, 544 F.3d at 1288 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477–78.

Here, Defendants do not address the third prong, and for that reason, Defendants have failed to satisfy their burden under that prong. Even so, all factors indicate that exercising personal jurisdiction over Defendants would not be unreasonable. First, there is no suggestion that requiring Defendants to adjudicate this case in Florida would be unconstitutionally burdensome. Second, "Florida has a very strong interest in affording its resident[] a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Third, Plaintiff has an interest in adjudicating this case in the forum where it resides and where its injury occurred. *See Lovelady*, 544 F.3d at 1288 ("[T]he Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy."); *see also Louis Vuitton*, 736 F.3d at 1358.

Lastly, the judiciary's interest is not opposed to Florida adjudication, or at least, Defendants have failed to demonstrate as much. Thus, fairness does not prohibit the exercise of personal jurisdiction over Defendants, and hence, neither does the Due Process Clause of the Fourteenth Amendment.

### IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendants' Motion to Dismiss (Doc. 22) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on April 6, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record